Abdu Jackson, :
                   Petitioner :
                   :
          v. :
                   :
Pennsylvania Board of :
Probation and Parole, : No. 1475 C.D. 2016
          Respondent : Submitted: March 24, 2017


BEFORE:    HONORABLE P. KEVIN BROBSON, Judge
               HONORABLE ANNE E. COVEY, Judge
               HONORABLE JOSEPH M. COSGROVE, Judge


OPINION BY
JUDGE COVEY                       FILED: August 23, 2017


Abdu Jackson (Jackson) petitions this Court for review of the Pennsylvania Board of Probation and Parole's (Board) August 11, 2016 order denying his request for administrative relief. There are three issues before this Court: (1) whether the Board properly required Jackson to be evaluated for participation in a sexual offenders' treatment program and determined that he had violated his parole for his failure to do so; (2) whether Jackson failed to exhaust his administrative remedies; and, (3) whether the Board coerced Jackson to agree to adhere to a sexual offender evaluation and treatment condition in order to be released on parole. After review, we affirm.

Jackson was sentenced to a 12 to 30-year sentence for burglary and aggravated assault. On January 28, 2010, the Board denied Jackson parole based, in part, on Jackson's "need to participate in and complete additional institutional programs." Notice of Board Decision (Notice), January 28, 2010, Certified Record (C.R.) at 4. The Board further stated: "At your next interview, the Board will review

your file and consider: [w]hether you have successfully participated in/successfully completed a treatment program for sex offenders and violence prevention." *Id*.

On September 22, 2010, the Board again denied Jackson parole. In its Notice of Board Decision, the Board explained that it did so due to, among other things, Jackson's institutional behavior, his level of risk to the community, his minimization of the nature and circumstances of his offenses, his lack of remorse, his failure to accept "responsibility for [his] extensive antisocial behavior[,]" and his apparent lack of "benefit from program participation." Notice, September 22, 2010, C.R. at 6. The Board also related that "[a]t your next interview, the Board will review your file and consider: . . . [the a]ffidavit of probable cause **on** [**your**] **corruption of minors/indecent assault conviction of June 1995** . . . ." C.R. at 7 (emphasis added).

On November 2, 2011, the Board granted Jackson parole to a Community Corrections Residency, subject to the special condition that he participate in out-patient drug, alcohol and sex offender treatment until the treatment facility or parole supervision staff determine it is no longer necessary.

On March 14, 2014,[1] Jackson signed conditions governing parole. Jackson was again informed that "out-patient drug/alcohol/sex offender treatment is a special condition of [his] parole supervision until the treatment source and/or parole supervision staff determine it is no longer necessary." C.R. at 13. Jackson also signed a condition challenge provision which stated:

> If you believe the above Special Conditions are inappropriate, you may submit a timely complaint in writing, first to the supervisor of the district office under which you are being supervised. If your complaint is not resolved to your satisfaction, you may then submit your complaint in writing to the Director of Supervision.

---

[1] The record is not clear with respect to occurrences in the period between Jackson's parole on November 2, 2011 and March 14, 2014.

C.R. at 12 (Condition Challenge Provision). On March 17, 2014, Jackson was released on parole. Jackson attended sex offender treatment but was unsuccessfully discharged from the program on February 23, 2015, for failing to complete an intake evaluation and attend scheduled appointments.

On February 26, 2015, the Board issued a warrant to commit and detain Jackson. On the same date, Jackson waived a violation hearing and admitted to a technical parole violation for an "[u]nsuccessful discharge [on February 23, 2015] from sex offender treatment[.]" C.R. at 17. The Board's hearing report includes factual findings that "[p]lacement in [state correctional institution (]SCI[)] . . . [is] appropriate due to: [a v]iolation [] sexual in nature . . . ; [t]he parolee [] demonstrating unmanageable behavior, which makes him . . . not amendable [sic] to diversion; [n]ot complying with [sexual offender] treatment in last year by missing meetings[; and being] deceptive on polygraphs and den[ying his] offense." C.R. at 23. On March 25, 2015, the Board recommitted Jackson for 6 months as a technical parole violator and directed Jackson be reparoled automatically on August 26, 2015. On April 14, 2015, the Board issued a decision rescinding the March 25, 2015 Board action "due to [the] withdrawal of waiver," and again recommitted Jackson as a technical parole violator for 6 months for "failure to successfully complete sex offender treatment." C.R. at 46.

On April 15, 2015, Jackson filed an administrative appeal from the Board's recommitment order. In his appeal, Jackson denied that he had missed appointments, represented that he had requested to change the time of treatment due to his work schedule, and alleged that his parole officer agreed to seek funding for his sexual offender treatment, but failed to do so. Jackson further asserted that he was not a threat to the community since the special condition mandating the sexual offender treatment "now imposed on [Jackson] stem[s] from a 1995 charge[] that was served[] in which [Jackson] underwent evaluations, prior to maxing out that

3

sentence." C.R. at 85. In his appeal, Jackson did not challenge the Board's authority to impose the special condition. On July 7, 2015, the Board reaffirmed Jackson's April 14, 2015 recommitment.

On August 25, 2015, Jackson signed conditions governing parole and special conditions for sex offenders which, in part, mandated that he obtain a sex offender evaluation from an approved sex offender treatment provider and complete all recommended treatment (Sexual Offender Condition). Jackson was also instructed that he must report to the York Community Corrections Center (York CCC) and "enter into and actively participate in the Community Corrections Program until successfully discharged by the parole supervision staff." C.R. at 51. Jackson again acknowledged the Condition Challenge Provision. Jackson was released on parole on August 26, 2015.

On October 13, 2015, the Board declared Jackson delinquent as of October 9, 2015 and, on January 28, 2016,[2] issued a warrant for his arrest for, *inter alia*, absconding from the York CCC and failing to complete sex offender treatment. On February 12, 2016, Jackson waived a hearing and admitted the violations. On March 14, 2016, the Board recommitted Jackson for 9 months based on multiple technical parole violations, including changing residences without permission, failing to successfully complete sex offender treatment, and failing to complete the York CCC program.

On March 25, 2016, Jackson filed an administrative appeal, wherein he argued, *inter alia*, that he absconded to return to school to better himself, and that he attended the sexual offenders group but was financially unable to continue. Jackson further explained that he did not receive the assistance his parole officer offered, and he disputed that he was ever directed to be enrolled in a domestic violence treatment

---

[2] There is nothing in the record explaining the Board's delay in issuing a warrant.

program.  Notably, Jackson did not raise the issue of the Board's authority to impose the Sexual Offender Condition, or its validity.

On August 11, 2016, the Board denied Jackson's appeal, stating:

1. You [were] released on parole on March 14, 2014.

2. You were recommitted to a [SCI]/contracted county jail on March 25, 2015.

3. You were released on parole on August 26, 2015.

4. You were declared delinquent on October 13, 2015, after you absconded from supervision.

5. You remained an absconder until January 28, 2016, when you were arrested in Georgia.

6. On February 12, 2016, you executed a PBPP-72T [form], admitting to a violation of Condition #2 and four violations of Condition #7.

7. The decision you are challenging is your second recommitment to a [SCI]/contracted county jail.

. . . .

The record in this matter establishes that the Board decision recorded March 14, 2016 . . . is supported by substantial evidence, does not constitute an error of law, and does not violate your constitutional rights.

C.R. at 102.  Jackson petitioned this Court for review.[3]

Initially, we note that Section 6132(a)(1)(i) of the Parole Act (Act) grants the Board exclusive power "[t]o parole and reparole, commit and recommit for violations of parole and to discharge from parole all persons sentenced by any court at any time to imprisonment in a correctional institution[.]"  61 Pa.C.S. §

---

[3] "In reviewing the Board's Orders, our review 'is limited to determining whether the Board's findings are supported by substantial evidence, an error of law [was] committed, or whether any of the parolee's constitutional rights were violated.'"  *Banks v. Pa. Bd. of Prob. & Parole*, 136 A.3d 1102, 1105 n.4 (Pa. Cmwlth. 2016) (quoting *Andrews v. Pa. Bd. of Prob. & Parole*, 516 A.2d 838, 841 n.10 (Pa. Cmwlth. 1986)).

6132(a)(1)(i). The Board's purpose is to "first and foremost seek to protect the safety of the public." 61 Pa.C.S. § 6102(2). Section 6135(a) of the Act directs the Board to consider, *inter alia*,

> (1) [t]he nature and circumstances of the offense committed[;]
>
> (2) [a]ny recommendations made by the trial judge and prosecuting attorney[;]
>
> (3) [t]he general character and background of the inmate[;]
>
> . . . .
>
> (7) [t]he conduct of the person while in prison and his physical, mental and behavioral condition and history, his history of family violence and his complete criminal record.

61 Pa.C.S § 6135(a). This Court has explained that "**there is no prerequisite to a valid parole condition that the parolee must agree to its terms.** After a convict has met certain eligibility parole requirements, he is then paroled subject to certain general and possibly some special conditions." *Benefiel v. Pa. Bd. of Prob. & Parole*, 426 A.2d 242, 244 (Pa. Cmwlth. 1981) (emphasis added).

Section 63.5 of the Board's Regulations pertaining to special conditions provides:

> (a) Parolees **shall comply with special conditions** which are imposed by the Board or which are subsequently imposed by the parole agent.
>
> (b) If problems arise or questions occur concerning the conditions of parole, the parolee shall consult with the parole agent, as it is the responsibility of the latter to help the parolee in the interpretation of the conditions of parole. If a parolee is unable to contact his parole agent, he should contact the agent in charge of the district parole office.

37 Pa. Code § 63.5 (emphasis added).

Jackson first argues that the Board violated his due process rights when it required him to adhere to the Sexual Offender Condition because his underlying conviction did not involve an act of a sexual nature. The Board responds that it acted properly, given Jackson's prior conviction for corruption of minors/indecent assault, and, that Jackson failed to exhaust his administrative remedies by raising the issue of the Sexual Offender Condition before the Board. We agree.

> This Court has explained:
>
> Under the doctrine of exhaustion of administrative remedies, which we have previously held to be applicable to the Board's recommitment orders, a parolee is required to exhaust *all* available administrative remedies before a right to judicial review of that order arises. Therefore, a parolee's failure to exhaust his available administrative remedies acts as a bar to judicial intervention in the administrative process.
>
> The primary purpose of the exhaustion doctrine is to ensure that claims will be heard, as a preliminary matter, by the body having expertise in the area. This is particularly important where the ultimate decision rests upon factual determinations lying within the expertise of the agency or where agency interpretations of relevant statutes or regulations are desirable. In addition, the exhaustion doctrine provides the agency with the opportunity to correct its own mistakes and to moot judicial controversies.

*St. Clair v. Pa. Bd. of Prob. & Parole*, 493 A.2d 146, 151-52 (Pa. Cmwlth. 1985) (citations omitted).

In the instant matter, Jackson was paroled and reparoled several times, and on each occasion was provided the Condition Challenge Provision which stated that if he believed the special conditions were inappropriate, he could submit a complaint to the proper Board representatives. *See e.g.* C.R. at 51. The record reveals that Jackson signed the Condition Challenge Provision on more than one

7

occasion but at no time exercised his rights under that provision.[4]  Rather, Jackson waited until **after** he was unsuccessfully discharged from the sexual offender program and found to have violated the parole conditions, to argue to this Court that the Sexual Offender Condition should not have been imposed.  Because Jackson did not exhaust his administrative remedies before the Board, he cannot now challenge the Board's imposition of the Sexual Offender Condition before this Court.[5]  *See also Hill v. Pennsylvania Board of Probation & Parole* (Pa. Cmwlth. No. 1759 C.D. 2009, filed October 29, 2010),[6] (wherein this Court addressed circumstances substantially similar to the instant matter).

Jackson next claims that the Board coerced him to agree to the Sexual Offender Condition on the threat that he would remain incarcerated if he refused.  We disagree.  Jackson had no legal right to negotiate the terms of his parole.  *See Benefiel*.  This Court has stated:

> Although a parolee is entitled to a brief statement of the reasons for the grant or denial of parole, . . . we find no support nor . . . any authority for the proposition that a putative parolee is entitled to counsel to negotiate the terms and conditions of parole.  The rationale seems quite obvious.  Parole is granted at the discretion of the Board, . . . and the parolee remains in constructive custody of the Commonwealth.  As with an incarcerated individual, the Commonwealth, via the Board, may place restrictions on a parolee's liberty intended to effectuate the parolee's

---

[4] There is no record evidence that Jackson ever challenged the imposition of the Sexual Offender Condition before the Board.

[5] Although we do not reach the question of whether the Board was permitted to impose the Sexual Offender Condition as a special condition where the underlying conviction was not a sexual offense, we note that Section 6135(a) of the Act directs the Board to consider "[t]he general character and background of the inmate" and the inmate's "physical, mental and behavioral condition and history, his history of family violence and **his complete criminal record.**"  61 Pa.C.S § 6135(a)(3), (7) (emphasis added).

[6] We acknowledge that this Court's unreported memorandum opinions may be cited "for [their] persuasive value, but not as a binding precedent."  Section 414(a) of the Commonwealth Court's Internal Operating Procedures, 210 Pa. Code § 69.414(a).

rehabilitation and integration into society. Thus, where a putative parolee indicates an unwillingness to abide by the terms and conditions of parole, the Board may determine that parole is not within the individual's best interest and deny parole.

*Lee v. Pa. Bd. of Prob. & Parole*, 885 A.2d 634, 639 (Pa. Cmwlth. 2005).

Thus, to be granted parole, Jackson was **required** to **acknowledge**:

(1) That he has read, or has had read to him, the conditions of his parole.

(2) That he fully understands the conditions of his parole and agrees to follow such conditions.

(3) That he fully understands the penalties involved if he violates the conditions of parole in any manner.

37 Pa. Code § 67.3. Jackson contends that he agreed to the conditions under duress because he did not want to remain incarcerated. However, Jackson's argument implicitly presumes that Jackson was forced to make a **choice** about whether the conditions were acceptable to him. Jackson had no such choice. "An inmate has no liberty interest in being paroled, . . . in not being labeled a sex offender, or in not being required to participate in sex offender programming[.]" *Wilson v. Pa. Bd. of Prob. & Parole*, 942 A.2d 270, 273 (Pa. Cmwlth. 2008). Further, even if Jackson felt pressured to accept the conditions, he still had the option to agree, but then challenge the Sexual Offender Condition under the Condition Challenge Provision.

Although Jackson represents that there is "little or no case law on this subject,"[7] this same argument was rejected by the United States District Court for the Eastern District of Pennsylvania in *Hadden v. Jacobs* (E.D. Pa., Civ. A. No. 90-0199, filed January 22, 1990), 1990 WL 4368.[8] In that case, the plaintiffs brought a civil

---

[7] Jackson's Br. at 21.

[8] "Courts of this Commonwealth are not required to follow federal courts on federal questions, let alone on questions involving state law." *Weaver v. Pa. Bd. of Prob. & Parole*, 688

rights claim against the Board members, alleging that the Board's parole procedures violated state contract law and the United States Constitution. The *Hadden* Court rejected the plaintiffs' claims and dismissed the complaint as frivolous, stating:

> Plaintiff Hadden is under a mistaken belief that he has a right to bargain for the conditions of his release on parole. The choice that a prisoner has in regard to parole is either accept it or remain in jail. There is no constitutional or inherent right of a convicted person to be conditionally released before the expiration of a valid sentence. *Greenholtz v. Inmates of the Nebraska Penal and Corr*[.] *Complex,* 442 U.S. 1 (1979). Parole is a matter of discretion and not a right, and the state may stipulate its terms and conditions as well as the status of a parolee. *Bricker v. Michigan Parole B*[*d.*]*,* 405 F. Supp. 1340 (D.C. Mich. 1975).
>
> Plaintiff Hadden further contends that given the choice between prison and parole amounted to duress, and this duress caused him to agree to the conditions of his parole. Hadden alleges that under Pennsylvania law this duress negated his voluntary consent to the parole conditions and, therefore, the terms are not binding. However, under Pennsylvania law there is no prerequisite to a valid parole condition that a parolee must agree to its terms. [*Benefiel*].

*Hadden*, 1990 WL 4368, at *1. Because we see no error in the *Hadden* Court's reasoning, we adopt its analysis.[9]

---

A.2d 766, 772 n.11 (Pa. Cmwlth. 1997). Notwithstanding, we find that *Hadden* is persuasive herein.

[9] In his brief, Jackson relies heavily upon the United States Supreme Court decision in *Birchfield v. North Dakota*, 136 S.Ct. 2160 (2016), wherein the Court held that a driver could not be deemed to have consented to an intrusive blood test merely by driving on public roads where the state imposed criminal penalties for refusing to submit to the blood test. *Birchfield* involved a driver who was convicted of driving under the influence after agreeing to submit to a blood test only after police informed him that refusing a chemical test was a crime. In contrast, Jackson is a prison inmate who has no liberty interest in being paroled and has no right to negotiate the terms of his parole. *Birchfield* is clearly inapposite to the instant matter.

For all of the above reasons, the Board's decision is affirmed.

_____
ANNE E. COVEY, Judge

Judge Cosgrove concurs in the result only.

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Abdu Jackson, : 
               Petitioner : 
                 : 
        v. : 
                 : 
Pennsylvania Board of : 
Probation and Parole, :    No. 1475 C.D. 2016
           Respondent : 

## O R D E R

AND NOW, this 23rd day of August, 2017, the Pennsylvania Board of Probation and Parole's August 11, 2016 order is affirmed.

_____
ANNE E. COVEY, Judge