J-S05010-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| JUSTIN SCHEER | : | |
| | : | |
| Appellant | : | No. 786 WDA 2022 |

Appeal from the PCRA Order Entered June 14, 2022
In the Court of Common Pleas of Allegheny County Criminal Division at
No(s): CP-02-CR-0012731-2009

BEFORE: BENDER, P.J.E., LAZARUS, J., and McLAUGHLIN, J.

MEMORANDUM BY BENDER, P.J.E.:                **FILED: April 28, 2023**

Justin Scheer, Appellant, appeals from the post-conviction court's order denying as untimely his motion for collateral relief. We affirm.

Appellant entered a guilty plea to two counts of robbery and two firearms violations after negotiating a plea agreement with the Commonwealth. Appellant, who was sixteen years old at the time of the incident, was initially charged with seven counts pertaining to a shooting. The victim, who was on friendly terms with Appellant, was taking a shortcut through a cemetery to a friend's house when Appellant and an unnamed individual approached. Appellant demanded that the victim give him everything he was carrying. When the victim refused and began to walk away, Appellant pulled out a revolver and fired two shots. One of the bullets struck the victim in his buttocks. Appellant pleaded guilty to the four charges specified above, with the Commonwealth agreeing to withdraw the remaining

counts. Appellant was facing a mandatory minimum sentence of five to ten years' incarceration at the robbery counts, and the Commonwealth agreed to request an aggregate sentence of five to ten years' incarceration. The parties made no agreement as to probation.

On September 9, 2010, the trial court accepted the plea and sentenced Appellant to the agreed-upon term of incarceration, as well as a consecutive period of five years' probation to be supervised by the Board of Probation and Parole ("Board"). Appellant did not file post-sentence motions or a direct appeal.

It is not entirely clear when Appellant was paroled. The certified record establishes that on or about April 26, 2011, Appellant accepted state supervision of his probation. On July 16, 2019, the trial court issued a bench warrant for Appellant's arrest due to a probation violation. This violation was apparently cleared. Appellant was detained again sometime in 2020 due to an arrest on unrelated charges. He filed a *pro se* motion to lift his detainer in August of 2020, followed by a *pro se* petition for *habeas corpus* relief in September, and another *pro se* motion in December of 2021. The court did not rule on those motions. On January 26, 2022, the Commonwealth requested that the court appoint counsel as Appellant was seeking relief available under the Post Conviction Relief Act ("PCRA"), 42 Pa.C.S. §§ 9541-9546. The court appointed counsel and directed the filing of an amended petition or an advisement that no further amendment was necessary.

On April 21, 2022, Appellant filed a pleading captioned as a petition for relief under the PCRA and/or a motion to enforce plea agreement, and/or a petition for writ of *habeas corpus.* With respect to PCRA claims, Appellant sought to challenge the voluntariness of his guilty plea and, as discussed in detail below, argued that an exception to the time-bar applied. Regarding his claims for enforcement of his plea bargain, Appellant maintained that this request for relief may be filed outside the PCRA and argued that the Commonwealth violated its agreement when the Board imposed certain probationary conditions. He thus sought to have those probation conditions invalidated. Finally, Appellant argued that, if the claims were deemed to be untimely under the PCRA, they could be addressed as a writ of *habeas corpus*. ***See generally Commonwealth v. Judge***, 916 A.2d 511, 520 (Pa. 2007) (holding that a claim concerning deportation from Canada to face the death penalty may be raised outside the PCRA; "this Court has never held that *habeas corpus* cannot provide a separate remedy, in appropriate circumstances").

The PCRA court determined that the claim for contractual enforcement failed as the probation conditions were imposed at a separate case. The court construed the voluntariness-of-the-guilty-plea claim as a request for relief under the PCRA and determined that the cited time-bar exception did not apply. As such, the court entered an order denying Appellant's petition.

Thereafter, Appellant filed a timely notice of appeal. He complied with the PCRA court's order to file a Pa.R.A.P. 1925(b) concise statement, and the

- 3 -

court authored an opinion in support pursuant to Rule 1925(a). Appellant

raises the following points for our review:

> I. The [c]ourt had jurisdiction to rule on [Appellant]'s Motion to Enforce Plea Agreement and Petition for Writ of *Habeas Corpus* because these motions do not fall under the timeliness provisions of the [PCRA].
>
> II. The [c]ourt had jurisdiction to rule on [Appellant]'s Amended PCRA Petition because it fell within an exception to the timeliness provisions of the [PCRA] where [Appellant] filed within one (1) year of discovering that he suffers from lead poisoning, which caused an unknowing[ —] and therefore illegal[ —] guilty plea.
>
> III. [Appellant] is entitled to the benefit of the plea bargain he entered, and to the terms explained to him as part of the plea agreement.

Appellant's Brief at 5.

"Our standard of review of a PCRA court's dismissal of a PCRA petition

is limited to examining whether the PCRA court's determination is supported

by the record evidence and free of legal error." ***Commonwealth v.***

***Whitehawk***, 146 A.3d 266, 269 (Pa. Super. 2016). All PCRA petitions,

including second or subsequent petitions, "shall be filed within one year of the

date the judgment becomes final, unless the petition alleges and the petitioner

proves" one of three statutory exceptions. ***See*** 42 Pa.C.S. § 9545(b)(1)(i-iii).

"The General Assembly's determination that a PCRA petition must be filed

within one year of when a petitioner's judgment of sentence becomes final is

statutorily described as a jurisdictional limitation." ***Scott v. Pennsylvania***

***Bd. of Prob. & Parole***, 284 A.3d 178, 187 (Pa. 2022). Our Supreme Court

has held that this jurisdictional requirement implicates subject-matter

jurisdiction, *id.*, and the timeliness of a petition is "a threshold question implicating our subject matter jurisdiction and ability to grant the requested relief." *Commonwealth v. Whitney*, 817 A.2d 473, 478 (Pa. 2003), *overruled on other grounds by Commonwealth v. Small*, 238 A.3d 1267 (Pa. 2020).

Additionally, "both the PCRA and the state *habeas corpus* statute contemplate that the PCRA subsumes the writ of *habeas corpus* in circumstances where the PCRA provides a remedy for the claim." *Commonwealth v. Hackett*, 956 A.2d 978, 985–86 (Pa. 2008). Our Supreme Court has interpreted the PCRA to reflect a legislative judgment that "claims that **could** be brought under the PCRA **must** be brought under that Act. No other statutory or common law remedy 'for the same purpose' is intended to be available; instead, such remedies are explicitly 'encompassed' within the PCRA." *Commonwealth v. Hall*, 771 A.2d 1232, 1235 (Pa. 2001) (emphasis in original).

Initially, we address Appellant's claim that some or all of his claims are not subject to the PCRA. Beginning with the voluntariness of his plea, it is well-settled that "to be valid, a guilty plea must be knowingly, voluntarily and intelligently entered." *Commonwealth v. Pollard*, 832 A.2d 517, 522 (Pa. Super. 2003). If a challenge to the voluntariness of the plea is premised on some defect or inadequacy in the court's colloquy, those claims must be raised during the direct appeal process. *See Commonwealth v. Fears*, 86 A.3d 795, 808 (Pa. 2014) (examining, on collateral review, whether the underlying

- 5 -

guilty plea was voluntarily entered as filtered through ineffective assistance of direct appellate counsel for failing to litigate that claim). While Appellant is not challenging the voluntariness of his plea by reference to counsel's performance or any defect in the colloquy, he asserts that newly-discovered facts support the pursuit of the involuntariness claim. Appellant's challenge to his guilty plea could be brought under the PCRA and is therefore subject to its time constraints. *See Commonwealth v. Kutnyak*, 781 A.2d 1259, 1261 (Pa. Super. 2001) (holding that a *pro se* petition challenging the validity of a guilty plea must be treated as a PCRA).

Appellant acknowledges that the petition is patently untimely. Nevertheless, he claims that he meets the timeliness exception set forth in Section 9545(b)(1)(ii). *See* 42 Pa.C.S. § 9545(b)(1)(ii) (providing an exception to the PCRA's one-year time bar when "the facts upon which the claim is predicated were unknown to the petitioner and could not have been ascertained by the exercise of due diligence"). Specifically, Appellant submits that, in January of 2022, "he obtained copies of his [s]ister's blood tests, which were performed when she was approximately … 1 year old, which revealed that she had high levels of lead in her system." Amended Petition for Relief, 4/21/22, at 9. Appellant states that he and his sister grew up together and argues that the test proves that he was exposed to the same toxins. If the time-bar is satisfied, Appellant wishes to pursue a claim that the asserted lead poisoning rendered his plea invalid "and he should be permitted to withdraw it through a showing of prejudice that rises to the level of manifest injustice."

*Id.* (quoting **Commonwealth v. Yeomans**, 24 A.3d 1044, 1046 (Pa. Super. 2011)).

> The PCRA court disposed of Appellant's claim as follows:
>
> Appellant alleges subsection (ii) applies to him. Appellant is incorrect. Appellant's "new fact" is his sister's January 2022 positive test for lead, which Appellant asserts means that he suffered from lead poisoning at the time of his plea, thus making his plea unknowing. Aside from the mental gymnastics required to connect a sibling's lead level in 2022 with Appellant's own lead level at any point, the issue of his sister's lead level is not new. In fact, the issues of her lead level and Appellant's lead level were addressed at the [d]ecertification hearing on July 6, 2010. Counsel for Appellant at the [d]ecertification hearing speculated that Appellant could have lead poisoning because he lived with his sister who tested positive for lead poisoning. This issue is not new as it relates to subsection (ii)[,] and this [c]ourt correctly found that this exception does not apply.

PCRA Court Opinion, 7/26/22, at 4 (citation to transcript and footnote omitted).

While not explicitly framed as such, we agree with the PCRA court that Appellant failed to plead and prove that he acted with due diligence in obtaining this newly-discovered fact. For claims that arose on or after December 24, 2017, a PCRA petitioner has one year to present the claim. 42 Pa.C.S. § 9545(b)(2) ("Any petition invoking an exception provided in paragraph (1) shall be filed within one year of the date the claim could have been presented."). Even crediting that Appellant is entitled to application of the statutory amendment, *i.e.*, that his claim arose on or after December 24, 2017, Appellant has failed to establish due diligence. We agree with the PCRA

- 7 -

court that Appellant has offered no explanation for why he could not have obtained this new fact earlier.

We find illustrative our decision in **Commonwealth v. Robinson**, 185 A.3d 1055 (Pa. Super. 2018) (*en banc*).  There, as here, the PCRA petitioner sought to establish that his plea was involuntarily entered based on facts learned long afterwards.  Robinson, who entered a guilty plea in 1983, asserted that he obtained information in 2015, establishing that his trial counsel had been using cocaine during his representation.  Specifically, Robinson learned from an inmate that Robinson's attorney had accepted a plea in 1994 to federal drug charges.  Robinson then reviewed the attorney's plea transcript, which indicated that the attorney regularly used cocaine during times relevant to his representation of Robinson's case.  The PCRA court did not address the timeliness of the petition, instead denying relief on the merits.  **Id.** at 1060.  A split panel initially determined that petitioner was entitled to an evidentiary hearing.  However, on *en banc* review, we concluded that Robinson failed to establish due diligence.  While distinguishing that inquiry from an assessment of the underlying claim's merits, we explained that a recognition of the nature of the claim is proper when ascertaining whether the petitioner has satisfied his or her due diligence obligations:

> [W]hile [**Commonwealth v.**] **Bennett**[, 930 A.2d 1264 (Pa. 2007),] and its progeny instruct courts to avoid analyzing the merits of the underlying claim, we believe that principle cannot go so far as to altogether preclude the courts from considering the claim the petitioner seeks to raise in determining whether an evidentiary hearing is warranted.  As an extreme example, suppose an incarcerated PCRA petitioner asserted in an untimely

- 8 -

petition that he recently discovered that the Houston Astros won the 2017 World Series. It would defy reason to suggest that a PCRA court must hold an evidentiary hearing to carefully apply the newly-discovered fact inquiry before considering how that fact could possibly matter. [**Commonwealth v.** ] **Cox**, [146 A.3d 221 (Pa. 2016),] stated that "[t]he function of a section 9545(b)(1)(ii) analysis is that of a gatekeeper." **Id.** at 229 n.11. A gatekeeping function contemplates that there may be a reason to open the gate.

"... [Robinson] alleged that trial counsel had a substance abuse issue in the early 1980s and **that counsel's addiction caused [Robinson] to enter an invalid plea**." [Robinson]'s brief at 4 (emphasis added). Recognizing the nature of the underlying claim—as distinguished from assessing its merits—is necessary to determine whether [Robinson] acted with due diligence in unearthing the newly-discovered facts.

**Id.** at 1061–62 (emphasis in original).

The **Robinson** Court ultimately affirmed the PCRA court's order on due diligence grounds. We explained that Robinson was "challeng[ing] counsel's mental state on the day of [his] plea," and accordingly was required to "uncover ... the 'facts upon which [his] underlying claim is predicated[.]'" **Id.** (quoting **Commonwealth v. Chmiel**, 173 A.3d 617, 625 (Pa. 2017)). Any deficiency in counsel's advice would have been apparent on the day of Robinson's plea, as he "always 'knew' that his counsel supplied ineffective advice, and he has failed to show why he could not have learned these newly-discovered facts at an earlier time." **Id.** at 1063.

A similar point applies here. We may not examine the merits of the claim that Appellant wishes to pursue, but we may recognize the nature of the underlying claim to assess due diligence. If Appellant's underlying claim has any traction whatsoever, the involuntariness of his plea must have been

known well before he obtained his sister's blood test. Appellant may not have known exactly which medical condition caused him to involuntarily plead guilty, but surely he realized, at some point between 2010 and 2022, that some defect was to blame. In other words, accepting that we cannot examine the merits of the claim, Appellant knew the theory, just not the precise reason. With respect to lead poisoning, Appellant had every reason to investigate that possibility. As the PCRA court pointed out, the issue of lead poisoning in Appellant's home was raised at his decertification hearing. Appellant, anticipating this response, argues that his "ability to raise the claim did not fully develop until he had actual proof, in the form of his sister's blood tests, in 2022." Appellant's Brief at 20. Appellant also argues that he was incarcerated and, even upon his release, "many restrictions were placed on him that continued to prevent him from obtaining the information he needed to support this claim." *Id.*

We disagree. Appellant's ability to raise his claim may have been stymied by his delay in obtaining the "actual proof," but this does not relieve him of the burden to discover facts that would enable him to press the known claim. Due diligence is a fact-intensive inquiry, and a petitioner must "take reasonable steps to protect his own interests. A petitioner must explain why he could not have learned the new fact(s) earlier with the exercise of due diligence." *Commonwealth v. Brown*, 111 A.3d 171, 176 (Pa. Super. 2015) (citations omitted). Even charitably extending to Appellant the proposition that an alleged lead poisoning would have prevented him from learning that

- 10 -

he was suffering from that malady in the intervening years, *cf. Commonwealth v. Cruz*, 852 A.2d 287, 292 (Pa. 2004) (holding that PCRA petitioner was permitted to raise newly-discovered evidence exception where petitioner had suffered a severe brain injury prior to the entry of his plea and wished to show that he had regained competence), Appellant has made no attempt to explain when he first suspected that lead poisoning may have affected his plea. Indeed, Appellant offers no explanation for why (or how) he obtained his sister's blood tests in the first place and why he suspected that his sister's blood test has anything to do with the voluntariness of his plea.

In any event, the fact that the source of this information is his own family member is fatal to his due diligence obligations. As Appellant alludes to, our jurisprudence recognizes that petitioners face difficulties in obtaining information while incarcerated. *See Commonwealth v. Burton*, 158 A.3d 618, 620 (Pa. 2017) (rejecting presumption that information in public record is not "unknown" as applied to incarcerated *pro se* individuals). However, as explained by *Robinson*, "*Burton* modifies the 'unknown' nature of public facts as applied to incarcerated *pro se* PCRA petitioners, but the case did not modify the due diligence inquiry." *Robinson*, 185 A.3d at 1064. Appellant has utterly failed to explain why he could not have obtained the test results earlier than 2022 by simply asking his sister or his mother for a copy of the document. In fact, Appellant does not even state when the report itself was dated. Since his sister was referenced at the decertification hearing, and this

document is from her first year of life, it appears that this document existed at the time of Appellant's plea. Based on the foregoing, we agree with the PCRA court that Appellant failed to establish the applicability of the newly-discovered-fact exception.

We now address Appellant's plea-bargain-enforcement claim. We agree that Appellant would be entitled to the benefit of his bargain if he established that he was entitled to specific performance. "[A] collateral petition to enforce a plea agreement is regularly treated as outside the ambit of the PCRA and under the contractual enforcement theory of specific performance." *Commonwealth v. Kerns*, 220 A.3d 607, 611–12 (Pa. Super. 2019). Thus, if Appellant could successfully establish that he made a bargain with the Commonwealth regarding his probation, he would be entitled to specific enforcement on a contractual theory. *See Commonwealth v. Martinez*, 147 A.3d 517, 533 (Pa. 2016) (upholding enforcement of plea bargain where trial court credited testimony that the plea agreement included specific term of a ten-year period of registration under sexual offender registration laws).

We note that the Commonwealth argues that this claim is waived because Appellant "fails to supply any documentation" concerning the conditions of his probation. Commonwealth's Brief at 7. Additionally, the Commonwealth agrees with the PCRA court that Appellant "may be … conflating the special conditions set forth in [this case] with those imposed" at his conviction for another case. *Id.* at 20. By way of background, at the time of his plea in this case, Appellant was also facing charges in Allegheny

County at a separate docket. Appellant accepted a guilty plea on June 13, 2011, to one count of aggravated indecent assault of a child and received a sentence of two to four years' incarceration, consecutive to any other sentence of confinement. The paperwork in the original record that was filed in connection with Appellant's probation detainer lodged at this docket states, under a field labeled "other," that Appellant must "continue sex offender treatment." *See* Docket Entry 15. Appellant responds that he is therefore required to comply with these conditions, which were not part of his plea bargain.

We agree with Appellant that his claim for specific performance is not subject to the PCRA. Simultaneously, there is some merit to the Commonwealth's position in that it is not clear exactly what Appellant is alleging. Two different concepts are at issue: the first being the authority to order Appellant to serve any period of probation, and, secondly, whether the conditions of probation are themselves legal. Appellant's argument touches on both aspects. In one portion of his brief, Appellant argues there was no authority to impose probation because there was no agreement to probation. *See* Appellant's Brief at 27 ("The probationary sentence, which was not part of the plea agreement, served as the basis for a detainer to be lodged against [Appellant] after he was released from incarceration."). In the next paragraph, however, Appellant appears to object not to the imposition of probation, but rather to the validity of the conditions imposed by the Board. *See id.* at 27-28 (arguing that "the probation office imposed overly broad,

strict conditions on him as part of the supervisory release[,]" including no contact with the minor victim from the other case and restrictions on internet access).

We conclude that Appellant is not entitled to relief as he has failed to show that there is any bargain to enforce. Whatever the merits of his "special conditions" claim, the flaw in Appellant's position is that the Commonwealth and Appellant simply made no bargain with respect to probation whatsoever. While we agree with the PCRA court and the Commonwealth that the directive to continue sexual offender treatment may well refer only to Appellant's obligations at his other criminal docket, there is no need to reach that part of Appellant's argument. As aptly stated in Appellant's brief, "[t]he probationary sentence … was not part of the plea agreement[.]" Appellant's Brief at 27. Because Appellant concedes there was no agreement to probation, then any derivative claim regarding specific performance concerning the special conditions necessarily fails, too. The certified record demonstrates that the Commonwealth and Appellant made no agreement to probation, and the trial court apparently imposed that sentence *sua sponte*. N.T., 9/9/10, at 3 (Commonwealth's stating that the negotiated sentence was for an aggregate sentence of five to ten years' incarceration); *id.* at 20 (imposing "a period of 5 to 10 years' incarceration, with a consecutive period of 5 years of probation"). Any obligations imposed by the Board derive directly from the trial court's order requiring Appellant to comply with any conditions imposed by that entity. ***See generally Commonwealth v. Elliot***, 50 A.3d 1284 (Pa.

2012) (discussing the interplay of the Sentencing Code and the Prisons and Parole Code, and whether other governmental actors may impose conditions on probation not dictated by the sentencing judge).[1]

Relatedly, we note that, to the extent Appellant is challenging the trial court's decision to depart from the plea bargain, which in turn authorized the Board to impose special conditions, that claim could have been pursued either on direct appeal or via an ineffective assistance of counsel claim in a timely PCRA petition. In **Commonwealth v. Berry**, 877 A.2d 479 (Pa. Super. 2005) (*en banc*), Berry elected to proceed *pro se* and negotiated a plea agreement with the Commonwealth. The Commonwealth agreed to recommend concurrent sentences, and the trial judge informed Berry that he could

_____

[1] We recognize that the Board would seem to have no authority to require Appellant to comply with sexual offender obligations in this robbery case. **See Commonwealth v. Shires**, 240 A.3d 974, 976 (Pa. Super. 2020) (vacating judgment of sentence imposed following probation revocation where probation conditions imposed by Board conviction were not germane to court-imposed conditions of probation). However, even if it were clear that Appellant's sentence were illegal in this regard, the claim would still be subject to the PCRA. **See Commonwealth v. Jackson**, 30 A.3d 516, 518 (Pa. Super. 2011) (holding that claim a sentence is patently illegal is subject to the PCRA); **Commonwealth v. McGee,** 276 A.3d 701 (Pa. 2022) (granting allowance of appeal to determine whether **Jackson** was correctly decided).

If, as in **Shires**, Appellant receives a probation revocation sentence he could challenge the validity of those conditions on direct appeal from any such sentence. Finally, we observe that, in the interim, it is possible Appellant could pursue relief in the Commonwealth Court. **Cf. Jackson v. Pennsylvania Bd. of Prob. & Parole**, 169 A.3d 1226, 1230 (Pa. Cmwlth. 2017) (concluding that litigant was precluded from challenging Board's imposition of special parole conditions due to failure to exhaust administrative remedies before the Board).

withdraw the plea if the court decided to reject the negotiated agreement. Berry chose to enter his plea, and sentencing was deferred. At sentencing, with Berry again proceeding *pro* se, the judge chose to impose consecutive sentences but did not reiterate that the plea could be withdrawn. Berry did not file a post-sentence motion nor did he file a direct appeal. Instead, he challenged the sentence in a timely PCRA petition.

We held that Berry waived his claim. "Since [Berry] failed to raise this claim in the trial court or on direct appeal, this issue is waived unless an exception to the waiver rule applies." ***Id.*** at 482. We declined to find that the trial court's deviation from the plea agreement implicated the legality of the sentence, as "current case law does not support the proposition that [Berry's] claim is a non-waivable challenge to the legality of the sentence. … [W]e decline to expand the definition of 'illegal sentence' to encompass claims of this type, because there is simply no principled basis for doing so." ***Id.*** at 484. We further determined that Berry could not succeed on the merits, as the trial court's failure to inform Berry that he could withdraw his plea "is not the same as 'failing' to allow [Berry] to withdraw his plea. Rather, it remained [Berry]'s responsibility to move to withdraw his plea, if he so desired." ***Id.***

The same logic applies here. The trial court announced that probation was a part of Appellant's sentence, and the sentencing order as contained in the certified record explicitly stated that the Board of Probation and Parole would impose the conditions. Order of Sentence, 9/8/10 (stating that Appellant is to "be placed on probation for a [m]inimum [t]erm of 5 years and

a [m]aximum [t]erm of 5 years to be supervised by [the Board]").[2]  ***Berry*** did not address an ineffectiveness theory since the litigant represented himself.  Here, however, Appellant could have raised this claim on direct appeal or in a PCRA proceeding as an ineffective assistance of counsel claim. Thus, to the extent Appellant is challenging the fact that probation was imposed at all, he has failed to establish any exception to the time-bar.[3]  We therefore affirm the PCRA court's order denying Appellant's petition.

Order affirmed.

_____

[2] We note that the guilty plea transcript is dated September 9, 2010.  The docket reflects that the sentencing order was docketed September 8, 2010.

[3] Requiring these claims to be brought during the direct appeal process or in a timely PCRA proceeding is consistent with the General Assembly's attempt to channel all collateral claims into the PCRA framework.  If Appellant were to successfully pursue his "plea bargain" theory at this late date, Appellant would receive a windfall by leaving intact the negotiated sentence of incarceration and withdrawal of charges while invalidating the probationary part of his sentence.  The trial court was not obligated to accept the plea as structured, and Appellant cannot now selectively decide that he wishes to benefit from some parts of his plea bargain while striking the portions that he does not like. The trial court may well have decided not to accept the plea without a period of supervision following confinement.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date:  4/28/2023